## COMMONWEALTH vs. RAY A. FULGHAM.

Suffolk. September 11, 1986. — January 20, 1987.

Present: BROWN, DREBEN, & SMITH, JJ.

*Evidence,* Failure to produce witness. *Assault with Intent to Rape. Practice, Criminal,* Instructions to jury.

At the trial of an indictment charging assault with intent to commit rape, the judge did not err in denying the defendant's request for an instruction to the jury that they might draw an inference against the Commonwealth from its failure to call two particular witnesses to testify as to fresh complaint, where these persons' testimony would have been, at most, cumulative of a police officer's fresh complaint testimony and where the prosecutors had provided the judge with a satisfactory explanation for not calling them to testify. [423-427]

At the trial of an indictment charging assault with intent to commit rape, the judge adequately instructed the jury on specific intent to rape the victim and, even if the judge had given an erroneous instruction on that element of the crime, no substantial risk of a miscarriage of justice would have resulted inasmuch as the challenged portion of his instructions did not relate to an issue actively contested at trial. [427]

INDICTMENT found and returned in the Superior Court Department on August 8, 1983.

The case was tried before *Paul A. Chernoff,* J.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Judy G. Zeprun,* Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was convicted by a Superior Court jury on an indictment that charged him with assault with intent to commit rape.[1] He claims on appeal that the judge erred in not giving a "missing witness" instruction. He also contends

---

[1] The defendant was acquitted on an indictment that charged him with assault by means of a dangerous weapon.

that the judge, in his instructions to the jury, erroneously defined the crime of assault with intent to commit rape.

We recount the evidence. The complainant testified that she met the defendant in early March, 1983, at a shoe store where he was a clerk. He asked her for her telephone number, and after she gave it to him, he called. They made a date to have dinner and attend a movie.

They met at the change booth of a subway station. He asked her to come back to his place so that he could change his clothes. She agreed and after they arrived there, they had something to drink, the defendant tried to hug and kiss her, and he offered her money to have sex with him. She refused, they struggled, and the defendant forced her to take off her clothes. He attempted repeatedly to have sexual intercourse with her but was unable to penetrate her. Finally, because she was screaming, he stopped and told her to get dressed. The defendant's uncle drove the complainant and the defendant part of the way back to her apartment, and the defendant gave her bus fare for the remainder of the trip.

After leaving the defendant and his uncle, the complainant met a girl friend, whom we shall call Jones, and told her what had happened. When the complainant arrived back at her apartment, she also told her boy friend, with whom she lived (we shall call him Andrews). The following day she reported the incident to a police officer.

The defendant, by his own testimony and that of others, presented evidence of an "alibi." He acknowledged having phoned the complainant on one occasion but only, he testified, for the purpose of ascertaining whether she intended to purchase the shoes she had placed on "layaway" at the store. He denied going out with her at any time. He testified that he had spent the day in question with friends playing ball, shopping for clothes, and attending a carnival.

1. *The "missing witness" instruction.* The rule that is the basis for the defendant's claim that the judge erred in not allowing his request for a "missing witness" instruction may be stated as follows: "Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or

at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that that person, had he been called, would have given testimony unfavorable to the party." *Commonwealth* v. *Schatvet, ante* 130, 134 (1986).

The problem concerning the "missing witness" instruction surfaced in the following manner. As previously noted, the complainant testified that she had told three persons, Jones, Andrews, and a police officer, of the incident shortly after it happened. During the Commonwealth's case, the police officer testified as a "fresh complaint" witness. Although present in the courtroom, Jones and Andrews were not called as witnesses. At the close of all the evidence, defense counsel submitted written requests for jury instructions. They included a request that the jurors be informed that they might draw an inference against the Commonwealth from its failure to call Jones and Andrews as witnesses, that inference being that if Jones and Andrews had testified, their testimony would have been adverse to the complainant.

The judge heard arguments from the prosecutor and defense counsel on the defendant's requested instructions. Defense counsel argued that although the witnesses were equally available to both sides, "it was natural and probable that the Commonwealth rather than the defense would produce them before the jury." The prosecutor asserted that presentation of Jones and Andrews as witnesses would have been cumulative and "would not have added anything to the case." He also stated that Andrews had a criminal record and was living with the complainant. The prosecutor stated that he did not want the jury to think that the complainant was "living with a known criminal," as that might be prejudicial to the Commonwealth's case.[2] After

[2] The question whether to call Jones and Andrews had also come up during the evidentiary phase of the trial. The prosecutor had informed the judge at that time that Jones was pregnant and in the process of moving, and he would not call upon her to testify to prevent her from having a "traumatic experience."

listening to the arguments of counsel, the judge denied the defendant's request.[3]

"Basic to the ['missing witness'] inference is the existence of evidence of physical availability of the witness . . . ." *Commonwealth* v. *Franklin,* 366 Mass. 284, 293 (1974). *Dent* v. *United States,* 404 A.2d 165, 170 (D.C. 1979).[4] Here, there is no question that the witnesses were available to the Commonwealth. However, the Commonwealth argues that because Jones and Andrews were in the courtroom, they were equally available to both sides, and therefore, no inference could be drawn against it (or the defendant) because Jones and Andrews were not called as witnesses.

"Although it has been frequently held that where a witness is equally available to either party no inference may be drawn against either for not calling him, there is no hard and fast rule to that effect." *Commonwealth* v. *Franklin,* 366 Mass. at 293, citing *Commonwealth* v. *O'Rourke,* 311 Mass. 213, 222 (1942). "The inference ha[s] been permitted against [one party], even in cases where the witness appeared to be equally available to both parties, when it also appeared that the posture of the case was such that the [first party] would be naturally expected to call the witness." *Commonwealth* v. *Niziolek,* 380 Mass. 513, 519 (1980), quoting from *Commonwealth* v. *Franklin,*

---

[3] The judge, however, permitted defense counsel, over the Commonwealth's objection, to say to the jury in his closing argument, "Wouldn't you like to have some more corroboration as to [the complainant's] story . . . . Wouldn't you like to have heard from . . . [Jones], and wouldn't you have liked to have heard from . . . [Andrews]?"

In addition, the judge gave the following instructions as to the lack of testimony from Jones and Andrews. He said, "In assessing whether or not or to what extent the testimony of the complaining witness has been corroborated or bolstered by fresh complaint, you should ask who if anyone the complainant spoke with following the events in question; what if anything was said; and whether or not the fresh complaint witness or witnesses were called to testify before you, the jury, at trial."

Both the Commonwealth and the defendant objected to this instruction. During its deliberations the jury submitted a question to the judge. They asked why Jones and Andrews had not testified. The judge, over the defendant's objection, repeated the above instructions practically verbatim.

[4] For a discussion of the meaning of "physical availability of the witness," see *Commonwealth* v. *Happnie,* 3 Mass. App. Ct. 193, 196-197 (1975).

366 Mass. at 293. Here, the complainant's testimony that the crime had even occurred was vigorously attacked by the defendant. Her testimony that she had told her girl friend and her live-in boy friend of the incident shortly after it happened was offered by the Commonwealth as corroboration of her testimony. In addition, Jones and Andrews were not strangers to the complainant but had a close relationship with her. Therefore, because of the posture of the case and the close relationship between the complainant and Jones and Andrews, the Commonwealth, not the defendant, would "naturally [be] expected" to call them as witnesses. Thus, the witnesses were not equally available to both the Commonwealth and the defendant. *Ibid.* See also *United States* v. *Mahone,* 537 F.2d 922, 926 (7th Cir. 1976); *Dent* v. *United States,* 404 A.2d at 170 (D.C. 1979).

The fact that Jones and Andrews were available to the Commonwealth as witnesses does not mean, however, that it had to call them as witnesses or run the risk of having the judge give a "missing witness" instruction against it. *Commonwealth* v. *Schatvet, supra* at 136 ("A party need not call everyone who might have information on a given subject, on pain, if he omits any, of suffering a jury inference that he is wrongly withholding damaging evidence"). A noncalling party may provide to the trial judge a satisfactory explanation for not calling an available witness. The explanation is sufficient, and "the missing witness rule is properly rejected, where the trial judge is 'satisfied that the circumstances thus offered would, in ordinary logic and experience, furnish a plausible reason for nonproduction.' [Quoting from 2 Wigmore, Evidence § 290 (1979).]" *Schatvet, supra* at 135 n.11, quoting from *Burgess* v. *United States,* 440 F.2d 226, 237 (D.C. Cir. 1970) (concurring opinion). In the circumstances of this case, the judge's action in deciding not to give the instruction was not error.

Jones and Andrews were not eyewitnesses. Their testimony would be, at most, cumulative of the police officer's testimony as to the fresh complaint. No basis for the inference exists "when it appears that the testimony would be unimportant . . . merely cumulative upon, the testimony of one or more wit-

nesses who have been called." *Schatvet,* at 134. In addition, the Commonwealth's other reasons for not calling Jones and Andrews as witnesses were accepted by the judge, and we do not perceive any abuse of his discretion. See *Commonwealth* v. *Franklin,* 366 Mass. at 294 ("A witness may be withheld because of his prior criminal record, or because he is susceptible to cross-examination on collateral issues, or for other tactical reasons").

2. *The instruction as to the elements of the crime.* The defendant was charged with assault with intent to commit rape. The elements of that crime include "(1) an assault upon the victim, and (2) a specific intent by the defendant at the time of the assault to rape the victim." *Commonwealth* v. *Nickerson,* 388 Mass. 246, 253 (1983). The defendant contends that the judge misdefined the "rape" element by omitting the requirement that the defendant must have the specific intent to have sexual intercourse by force. He argues that the omission permitted the jury to find the defendant guilty if they found that the defendant had committed an assault on the complainant accompanied by an intention to have *consensual* sexual intercourse with her. The defendant did not object to the instructions.

We have examined the entire charge and find that the judge adequately instructed the jury. Moreover, if there was error, it did not create a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). The defendant relied on an alibi. The question of consent by the complainant was not a live issue at trial. "Because the erroneous instruction on specific intent to [rape] did not relate to an issue actively contested at trial, no substantial risk of a miscarriage of justice resulted from the erroneous portion of the jury charge." *Commonwealth* v. *Gabbidon,* 398 Mass. 1, 5 (1986). *Commonwealth* v. *Shea,* 398 Mass. 264, 269-270 (1986).

*Judgment affirmed.*