SHAW, Judge.
 

 Bobby Joe Harbin was indicted for murder, a violation of § 13A-6-2, Ala.Code 1975. A jury convicted him of the lesser-included offense of heat-of-passion manslaughter, a violation of § 13A-6-3(a)(2), Ala.Code 1975. He was sentenced to 20 years’ imprisonment.
 

 The evidence adduced at trial indicated the following. In the late evening hours of January 10, 2003, Bobby Joseph Harris was stabbed to death during an altercation outside a gasoline service station in Jasper. The altercation had begun earlier in the evening when Harris and his wife, Sarah, were riding with a friend, Tim Crawford, in Crawford’s Ford pickup truck. As the three were traveling on Highway 78, a Volkswagen automobile tried to run the pickup truck off the road. Harbin was a passenger in the automobile; the automobile was being driven by Harbin’s younger brother, Michael. The two vehicles chased each other for a short time, attempting to run each other off the road, until Crawford realized “there wasn’t any sense” in continuing and ended the chase. (R. 127.) Crawford, Harris, and Sarah then went to a nearby Wal-Mart discount store to look for some of Crawford’s friends. Unable to find those ■friends, the three decided to leave Wal-Mart. As they were leaving the parking lot, they saw Harbin’s older brother, Ricky, who had had an affair with Harris’s wife Sarah, in an Oldsmobile automobile. Ricky and Harris exchanged words, and Ricky told Harris to meet him at a nearby gas station. Crawford, Harris, and Sarah then followed Ricky to the gas station.
 

 When Crawford pulled into the gas station, he saw that Ricky had parked next to the Volkswagen that Harbin and Michael had been in earlier. Crawford said that Ricky was standing by his car, but that he did not see Harbin and Michael. Sarah, however, testified that Harbin, Ricky, and Michael were all standing by them cars ■when she, Harris, and Crawford arrived. Harris got out of the truck and approached Ricky. The two argued and then began exchanging punches. Crawford testified at trial that Ricky threw the first punch; however, Sarah testified that Harris hit Ricky first. According to Crawford, Ricky then hollered and “from nowhere” Harbin and Michael “jumped out” to assist their brother. (R. 134.) Crawford testified that he saw Harbin stab Harris with a knife multiple times; however, Sarah testified that she did not see anyone with a weapon. Just as Crawford was getting out of his truck to help Harris, someone hollered that the police were 'coming, the fight broke up, and the three Harbin brothers left the scene. After the stabbing, Harris walked into the store and collapsed. The paramedics arrived, and Harris was transported to a nearby hospital, where he died from his stab wounds. Testimony indicated that the cause of Harris’s death was exsanguination as a result of three stab wounds — one to the chest, one to the right torso, and one to the right thigh. The partially serrated knife that had been used in the stabbing and that was later found by the police was approximately 7
 
 lk
 
 inches long, and the blade was over 3 inches long.
 

 The following day, Harbin and his brothers were arrested. Harbin gave two statements to police. In his first statement, Harbin said that Harris and Ricky had been arguing over Sarah since Sarah first began dating Harris, and that Harris had previously made threats toward him and
 
 *901
 
 his brothers. Harbin said that the night of the stabbing, he and Michael first saw Harris in a pickup truck on Highway 78, and that Harris tried to run him and Michael off the road and chased them. Harbin said that he and Michael then went to his cousin’s house to get Ricky because “I got tired of [Harris] messing with us.” (C. 145.) Harbin said that he, Michael, and Ricky then went to the Wal-Mart store, where they again saw Harris, at which point Harris threatened to kill them. Harbin said that he and his brothers ignored the threat and went to a nearby gas station, but that Harris followed them, and Harris and Ricky began fighting. Harbin admitted that he “pulled a knife out” when the fight started, but he claimed that he “wasn’t going to use it” and that he “forgot” that the knife was in his hand when he punched Harris. (C. 145.) With respect to the events leading up to the fight, Harbin’s second statement was essentially the same as his first. However, in his second statement, Harbin stated that he did not pull the knife out when the fight started, as he had said in his first statement, but that he already had the knife out and was using it to clean his fingernails when the fight started. Harbin continued to maintain in his second statement that he forgot that the knife was in his hand when he punched Harris, and he claimed that he was merely trying to help his brother. Harbin did not testify at trial, but he requested and received a jury instruction on self-defense or defense of others.
 

 On appeal, Harbin raises two issues, both relating to the trial court’s jury instructions. Specifically, Harbin argues: (1) that the trial court erred in sua sponte, and over his objection, instructing the jury on heat-of-passion manslaughter as a lesser-included offense of murder, and (2) that the trial court erred in refusing to instruct the jury on criminally negligent homicide as a lesser-included offense of murder.
 
 [1]
 
 The State initially argues that neither of these issues was properly preserved for review. However, we have reviewed the transcript of the lengthy charge conference, and we believe that both issues were fairly presented to the trial court, that the trial court was aware of Harbin’s arguments, and that the trial court rejected Harbin’s arguments.
 
 [2]
 
 See, e.g.,
 
 Ex parte Knight,
 
 453 So.2d 754, 756 (Ala.1984) (“The purpose of the objection rule is to give the trial court an opportunity to correct any alleged error or defect called to its attention before submission of the case to the jury.”). Therefore, we conclude that both issues are properly before this Court for review.
 

 I.
 

 Harbin first contends that the trial court erred in sua sponte instructing the jury, over his objection, on heat-of-passion manslaughter as a lesser-included offense of murder. He argues that he had the right to pursue an “all-or-nothing” approach, to refuse any lesser-included-of
 
 *902
 
 fense instructions, and to have the case submitted to the jury solely on the charge in the indictment.
 

 Initially, we note that “ ‘[a] trial court has broad discretion in formulating its jury instructions, provided they are an accurate reflection of the law and facts of the case.’ ”
 
 Toles v. State,
 
 854 So.2d 1171, 1175 (Ala.Crim.App.2002), quoting
 
 Coon v. State,
 
 494 So.2d 184, 186 (Ala.Crim.App.1986). “It has long been the law in Alabama that a trial court has broad discretion in formulating jury instructions, provided those instructions are accurate reflections of the law and facts of the case.”
 
 Culpepper v. State,
 
 827 So.2d 883, 885 (Ala.Crim.App.2001). Moreover, § 13A-l-9(a), Ala.Code 1975, provides that “[a] defendant may be convicted of an offense included in an offense charged.” This general rule is limited by § 13A-l-9(b), AIa.Code 1975, which provides that “[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.” Here, the parties do not dispute, and the record clearly reflects, that heat-of-passion manslaughter is a lesser-included offense of murder as charged in the indictment in this case and that there was evidence presented at the trial supporting a charge on heat-of-passion manslaughter.
 
 [3]
 
 Thus, the only question presented in this case is whether a trial court may instruct the jury on a lesser-included offense that is supported by the evidence in the face of the defendant’s desire to pursue an all-or-nothing strategy with the jury. We hold that it may.
 

 No Alabama court has squarely addressed whether a defendant has the right to pursue an all-or-nothing strategy and refuse instructions on any lesser-included offenses or whether a trial court may instruct the jury on a lesser-included offense over a defendant’s objection.
 
 [4]
 
 However, many other jurisdictions have addressed the issue, and the majority of those jurisdictions have held that a trial court does not err in instructing the jury on a lesser-included offense that is supported by the evidence, even over a defendant’s objection. See
 
 Blackhurst v. State,
 
 721 P.2d 645 (Alaska Ct.App.1986);
 
 Kurck v. State,
 
 235 Ark. 688, 362 S.W.2d 713 (1962);
 
 People v. Bradford,
 
 15 Cal.4th 1229, 939 P.2d 259, 65 Cal.Rptr.2d 145 (1997);
 
 State v. Johnson,
 
 601 So.2d 219 (Fla.1992);
 
 Powell v. State,
 
 270 Ga. 327, 510 S.E.2d 18 (1998);
 
 People v. Garcia,
 
 188 Ill.2d 265, 242 Ill. Dec. 295, 721 N.E.2d 574 (1999);
 
 Garrett v. State,
 
 756 N.E.2d 523 (Ind.Ct.App.2001);
 
 State v. Greer,
 
 439 N.W.2d 198 (Iowa 1989);
 
 State v. Cordray,
 
 277 Kan. 43, 82 P.3d 503 (2004);
 
 Smith v. Commonwealth,
 
 737 S.W.2d 683 (Ky.1987);
 
 Commonwealth v. Berry,
 
 431 Mass. 326, 727 N.E.2d 517 (2000);
 
 People v. Chamblis,
 
 395 Mich. 408, 236 N.W.2d 473 (1975), overruled on other grounds,
 
 People v. Cornell,
 
 466 Mich. 335,
 
 *903
 
 646 N.W.2d 127 (2002), overruled on yet other grounds,
 
 People v. Mendoza,
 
 468 Mich. 527, 664 N.W.2d 685 (2003);
 
 State v. Pankratz,
 
 238 Minn. 517, 57 N.W.2d 635 (1953);
 
 Harveston v. State,
 
 493 So.2d 365 (Miss.1986);
 
 State v. Pribil,
 
 224 Neb. 28, 395 N.W.2d 543 (1986);
 
 In re Nathan L.,
 
 146 N.H. 614, 776 A.2d 1277 (2001);
 
 State v. Powell,
 
 84 N.J. 305, 419 A.2d 406 (1980);
 
 State v. Montoya,
 
 116 N.M. 297, 861 P.2d 978 (1993), holding modified on other grounds,
 
 State v. Gomez,
 
 122 N.M. 777, 932 P.2d 1 (1997);
 
 State v. Schmidt,
 
 100 Ohio App.3d 167, 652 N.E.2d 254 (1995);
 
 McHam v. State,
 
 126 P.3d 662 (Okla.Crim.App.2005);
 
 State v. Keaton,
 
 15 Or.App. 477, 516 P.2d 490 (1974);
 
 State v. Cook,
 
 319 N.W.2d 809 (S.D.1982);
 
 State v. Bolden,
 
 979 S.W.2d 587 (Tenn.1998);
 
 McQueen v. State,
 
 984 S.W.2d 712 (Tex.Ct.App.1998);
 
 State v. Howell,
 
 649 P.2d 91 (Utah 1982); and
 
 In re Trombly,
 
 160 Vt. 215, 627 A.2d 855 (1993).
 

 In
 
 Commonwealth v. Woodward,
 
 427 Mass. 659, 694 N.E.2d 1277 (1998), the Massachusetts Supreme Court held that the trial court erred in acceding to defense counsel’s wishes that the jury not be instructed on involuntary manslaughter as a lesser-included offense of murder when the prosecution had requested such an instruction. The Court explained:
 

 “The Commonwealth presented evidence that the cause of Matthew’s [an eight-month-old child] death was severe head trauma inflicted on February 4, 1997, while he was in the sole custody of Woodward. The Commonwealth sought jury instructions on murder in the first degree on a theory of extreme atrocity or cruelty, murder in the second degree, and on the lesser included offense of involuntary manslaughter. Woodward objected to the last request, and asked that the jury be limited to considering the offense of murder. The judge acceded to her request. This was error. We have stated repeatedly that, ‘[w]hen the evidence permits a finding of a lesser included offense, a judge must, upon request, instruct the jury on the possibility of conviction of the lesser crime.’
 
 Commonwealth v. Gould,
 
 413 Mass. 707, 715, 603 N.E.2d 201 (1992). See
 
 Commonwealth v. Hobbs,
 
 385 Mass. 863, 871, 434 N.E.2d 633 (1982);
 
 Commonwealth v. Richmond,
 
 379 Mass. 557, 562, 399 N.E.2d 1069 (1980);
 
 Commonwealth v. Campbell,
 
 352 Mass. 387, 392, 226 N.E.2d 211 (1967). We have never limited this rule to requests made by the defendant, nor have we ever held that the Commonwealth is not entitled, evidence permitting, to such an instruction on request/
 
 [5]
 

 “This issue has arisen on appeal most often in cases in which the defendant requested an instruction on a lesser included offense. In the only case of which we are aware concerning the Commonwealth’s request for a lesser included instruction, which presented the converse of the question here, we affirmed a judge’s allowance of the request over the defendant’s objection.
 
 Commonwealth v. Thayer,
 
 418 Mass. 130, 132-133, 634 N.E.2d 576 (1994). See
 
 Commonwealth v. Matos,
 
 36 Mass. App.Ct. 958, 962, 634 N.E.2d 138 (1994) (defendant does not have absolute right to make tactical decisions that determine which theories of criminal liability are submitted to jury);
 
 Commonwealth v. Vasquez,
 
 27 Mass.App.Ct. 655, 660, 542 N.E.2d 296 (1989) (test to determine if instruction on lesser included offense required does not depend on whether defendant or Commonwealth objects, but rather whether evidence
 
 *904
 
 supports such instruction). Here, a disputed element — malice—distinguishes murder, the greater offense, from manslaughter, the lesser offense, and an instruction should have been given. Consideration of lower court denials of prosecutors’ requests for instructions on lesser included offenses would not reach us except in the unlikely procedural circumstances of this case, because the Commonwealth has no reason to appeal from a conviction, and is barred by double jeopardy principles from appealing from an acquittal. See
 
 Commonwealth v. Therrien,
 
 383 Mass. 529, 532, 420 N.E.2d 897 (1981). Authorities elsewhere hold overwhelmingly that the prosecution has a right to jury instructions on lesser included offenses, on request, if the evidence so warrants, in spite of a defendant’s objection. As far as we are aware, no jurisdiction that has considered the issue has allowed a defendant to veto a lesser included offense instruction properly requested by the prosecution.
 

 “Our conclusion that the Commonwealth was entitled to a manslaughter instruction is fortified by the policy favoring instructing juries on lesser included offenses. The doctrine .serves the public purpose of allowing the jury to convict of the offense established by the evidence, rather than forcing them to choose between convicting the defendant of an offense not fully established by the evidence or acquitting, even though the defendant is guilty of some offense.
 
 Commonwealth v. Walker,
 
 426 Mass. 301, 305, 687 N.E.2d 1246 (1997). Here, it was peculiarly inappropriate for the judge to refuse to charge the jury on manslaughter when, as revealed by his subsequent order reducing the jury’s verdict, in his view the evidence was not consonant with a conviction of murder. The jury, in reaching their verdict, surely must have concluded that the Commonwealth had proved beyond a reasonable doubt the element of causation— that Woodward’s acts caused Matthew’s fatal injury. By refusing to accede to the Commonwealth’s request for a manslaughter instruction, the judge imper-missibly prevented the jury from considering a lesser degree of culpability for Woodward.”
 

 427 Mass, at 662-665, 694 N.E.2d at 1282-84 (footnotes omitted). Subsequently, in
 
 Commonwealth v. Berry,
 
 supra, the Massachusetts Supreme Court expanded its holding in
 
 Commonwealth v. Woodward,
 
 and held that a trial court may also sua sponte instruct the jury on a lesser-included offense over the objection of the defendant. The Court explained:
 

 “Concerning the specific circumstances on which a lesser included offense instruction is to be given, our cases have stated repeatedly that, ‘[w]hen the evidence permits a finding of a lesser included offense, a judge must,
 
 upon request,
 
 instruct the jury on the possibility of conviction of the lesser
 
 crime’
 
 (emphasis supplied [in
 
 Berry
 
 ]).
 
 Commonwealth v. Woodward,
 
 427 Mass. 659, 662-663, 694 N.E.2d 1277 (1998), quoting
 
 Commonwealth v. Gould,
 
 413 Mass. 707, 715, 603 N.E.2d 201 (1992). See
 
 Commonwealth v. Pitts,
 
 [403 Mass.665,] 667 n. 2, 532 N.E.2d 34 [ (1989) ], quoting
 
 Commonwealth v. Walden,
 
 [380 Mass. 724,] 726, 405 N.E.2d 939 [ (1980) ] (‘we note that the fact that a defendant denies committing the homicide “does not relieve the judge from giving a manslaughter charge, on request, where the evidence would warrant conviction of that lesser crime” ’). ‘We have never limited this rule to requests made by the defendant, nor have we ever held that the Commonwealth is not entitled, evidence permitting, to such
 
 *905
 
 an instruction on request.’
 
 Commonwealth v. Woodward, supra
 
 at 663, 694 N.E.2d 1277.
 

 “The present case presents a slightly different factual situation: the judge, concerned that the evidence might warrant a manslaughter instruction, thoughtfully raised the issue sua sponte, despite the fact that neither side requested such an instruction. The Commonwealth then agreed to the instruction,[
 
 6
 
 ] but the defendant objected. Although
 
 Commonwealth v. Roberts,
 
 407 Mass. 731, 737, 555 N.E.2d 588 (1990), appears to hold that in certain circumstances a defendant may employ an ‘all-or-nothing’ strategy, we have made it clear since that case that the defendant cannot control this decision where the evidence would warrant a finding of guilty of the lesser included offense and the Commonwealth requests such an instruction. See
 
 Commonwealth v. Woodward, supra
 
 at 663 n. 7, 694 N.E.2d 1277. In the
 
 Woodward
 
 case, we stated that ‘[t]he
 
 Roberts
 
 case,
 
 supra,
 
 does not stand for the proposition ... that the defendant has an unqualified right to elect, evidence permitting, whether or not the jury receive a lesser included instruction’ (emphasis supplied [in
 
 Berry
 
 ]), and we specifically ‘disavowed] dictum that may suggest that the judge must honor, in the face of the Commonwealth’s objection, the defendant’s choice not to have a manslaughter instruction.’
 
 Id.
 
 We have also said that the defendant does not have an absolute right to make tactical decisions that determine which theories of criminal liability are submitted to the jury and have affirmed a judge’s allowance of the Commonwealth’s request for a lesser included offense instruction over the defendants’ objection. See
 
 Commonwealth v. Thayer,
 
 418 Mass. 130, 132-133, 634 N.E.2d 576 (1994).
 

 “The necessary corollary of this is that when the evidence would warrant a conviction of the lesser included offense and the element differentiating the offenses is in dispute, the judge may give the instruction despite objection by both the Commonwealth and the defendant. If the defendant alone cannot control which theories of criminal liability are submitted to the jury, both sides should not be able to do so. If, however, in these circumstances (either no request at all or objection by both sides) the judge chooses to give such an instruction, such action will not be -reversed on appeal, absent a substantial risk of a miscarriage of justice. On the facts of this case, the judge was entitled to raise with counsel whether to give a manslaughter instruction, in view of her determination that the evidence warranted such an instruction, but she was not required to do so.”
 

 431 Mass, at 337-38, 727 N.E.2d at 526-27 (footnotes omitted).
 

 In
 
 State v. Powell,
 
 supra, the New Jersey Supreme Court opined:
 

 “[W]e question whether it is proper for the trial court to omit such a charge [on a lesser-ineluded offense] simply because defense counsel specifically requests that it not be given, even where the prosecution concurs in that request. If that agreement between counsel reflects their belief that there is insufficient evidence to warrant such a charge, that is one thing: certainly a trial court would seriously consider counsel’s concurrence as indicating a high degree of probability that there is indeed insufficient evidence. Where, however, coun
 
 *906
 
 sel’s concurrence that no such charge be given, in the face of obvious record support for such charge, is based on their conclusions as to optimum strategy (defense counsel believing that the charge will impede what is believed to be a substantial chance of acquittal, the prosecution that it will impede what it believes to be a substantial chance of conviction of first or second degree murder) the manslaughter charge should be given to the jury. There is a third party involved (represented by the jury): the State itself, on behalf of its citizens. Them interest is paramount, even more important than preserving the ‘purity’ of the adversary system, especially when there seems to be no justifiable end served by that system in this particular situation. Very simply, where the facts on the record would justify a conviction of a certain charge, the people of this State are entitled to have that charge rendered to the jury, and no one’s strategy, or assumed (even real) advantage can take precedence over that public interest. It matters not that the defendant’s counsel may be
 
 correct
 
 in the belief that acquittal is more likely without such charge, or that defendant himself is willing to take that chance; nor does it matter that the prosecutor is content to forego the manslaughter instruction in the hope that a conviction of murder will result. The judge is more than a referee between contestants. He is the law’s representative, and it is his duty to see that the will of the law is done. The real function of the adversary system is to help him fulfill that duty.”
 

 84 N.J. at 318-19, 419 A.2d at 413-14.
 

 Further, in
 
 State v. Howell,
 
 supra, the Utah Supreme Court explained:
 

 “Defendant contends that the trial court erred in instructing, over his objection, that the jury could return verdicts on the lesser included offenses of manslaughter and attempted manslaughter. The argument is that the State must stand on the formal charges alleged in the information and that a defendant may only be tried
 
 on
 
 those crimes formally charged if the defendant wishes to hold the State to those charges — in this case first and second degree murder and attempted murder. Believing that he had a valid defense of self-defense to those charges, defendant objected to the giving of the lesser included offense instructions.
 

 “Usually issues concerning lesser included offenses arise by way of a defendant’s contention that the trial court erred in not giving him the benefit of an instruction on a crime claimed to be a lesser included offense. However, on occasion, an accused may choose not to request instructions on lesser included offenses as a matter of trial strategy, usually in the belief that he can defeat the greater charge, but might not be able to defeat a lesser included offense. See
 
 State v. Mora,
 
 Utah, 558 P.2d 1335 (1977);
 
 State v. Gellatly,
 
 22 Utah 2d 149, 449 P.2d 993 (1969). Indeed, a defendant for that reason may even oppose instructions on lesser included offenses, as in the case here, in the hope of escaping all criminal liability.
 

 “If one were to view a trial as a strictly adversarial contest or combat between two parties, one could argue that a defendant should have the right to win or lose solely on the basis of what the prosecution has charged. However, a criminal trial is much more than just a contest between the State and an individual which is determined by strategies appropriate to determining the outcome of a game. A primary purpose of a criminal trial is the vindication of the laws of a civilized society against those
 
 *907
 
 who are guilty of transgressing those laws. The process, however, must be based on procedures which are consonant with fairness both to the defendant and the State.
 

 “It is at best hazardous to predict just what the evidence at a trial will be. Every judge and every lawyer knows that witnesses’ testimony may, for a variety of reasons, be different than expected, or partially or even wholly undermined on cross-examination, or indeed not admitted at all for a variety of reasons.
 

 “However, when evidence of a defendant’s criminal conduct has been placed before a court of justice, even though that conduct has not been specifically charged, it would be a mockery of our criminal laws for a court to ignore a proved crime and acquit on the charged crime, when the defendant is not prejudiced in presenting a full and complete defense to the proved crime. Thus, if the state fails to make out every single element of the crime charged, but nonetheless proves a lesser included crime, every element of which defendant necessarily had to defend against anyway, it would be a travesty to acquit the defendant because the lesser included crime was not charged in the information.
 

 “We are not unmindful that there is a direct and significant relationship between the crimes the State charges and the ability of the defendant to defend himself. Due process requires that a defendant have adequate notice of the charges against him and sufficient time to prepare his defenses. Necessarily, the defendant gears his defenses to the allegations of the information and the bill of particulars. It is obviously impossible to defend adequately against charges which are not specified until the moment of instructing the jury, unless the charge is a lesser and clearly included offense. Under the Utah definition of a lesser included offense, there can be no unfairness to the defendant in giving a lesser included offense instruction because of lack of notice or preparation since no element may be included in the lesser offense that is not included in the greater
 
 offense.[
 

 7
 

 ] State v. Elliott,
 
 Utah, 641 P.2d 122 (1982);
 
 State v. Williams,
 
 Utah, 636 P.2d 1092 (1981).
 

 “This Court has never before directly ruled on the question of whether a trial court may, over objection, instruct on lesser included offenses. In
 
 State v. Mora,
 
 Utah, 558 P.2d 1335, 1337 (1977), we stated: ‘[fit is undoubtedly within the prerogative of the trial court to submit included offenses if he thinks that the interest of justice so require.’ See also
 
 State v. Mitchell,
 
 3 Utah 2d 70, 278 P.2d 618 (1955). Clearly the State has no legitimate interest in obtaining a conviction for a crime greater than that warranted by the evidence, but neither does the defendant have a right to an acquittal when the evidence, although not sufficient to establish the greater crime, is sufficient to establish a lesser included offense. The validity of this proposition has been affirmed by a number of states. E.g.,
 
 People v. Taylor,
 
 36 Ill.2d 483, 224 N.E.2d 266 (1967);
 
 Rayner v. State,
 
 Fla., 273 So.2d 759 (1973);
 
 State v. Pan-
 
 
 *908
 

 kratz,
 
 238 Minn. 517, 57 N.W.2d 635 (1953).
 

 “Accordingly, we hold that a trial court may properly give a lesser included offense instruction, even over a defendant’s objection, if there is clearly no risk that the defendant will be prejudiced by lack of notice and preparation so as to deprive him of a full and fair opportunity to defend himself.”
 

 649 P.2d at 94-95 (footnote omitted).
 

 We agree with the reasoning of these courts. The purpose of a criminal trial is to seek the truth, and the fact-finder, in this case the jury, is charged with sifting through the evidence presented at the trial, which is oftentimes conflicting, to ascertain that truth. See
 
 Estes v. Texas,
 
 381 U.S. 532, 540, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (“Court proceedings are held for the solemn purpose of endeavoring to ascertain the truth which is the sine qua non of a fair trial.”), and
 
 Briscoe v. LaHue,
 
 460 U.S. 325, 335, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (“ ‘It is precisely the function of a judicial proceeding to determine where the truth lies.’ ”), quoting
 
 Imbler v. Pachtman,
 
 424 U.S. 409, 439, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (White, J„ concurring in the judgment). To allow the defendant, or the State for that matter, to unilaterally control what theories of criminal liability are submitted to the jury would inhibit the basic truth-seeking function of a trial and would force the fact-finder to choose between two alternatives that may not necessarily reflect the truth — convicting the defendant of an offense that may not necessarily fit the crime or acquitting the defendant even when the defendant is clearly guilty of some offense. See, e.g.,
 
 People v. Barton,
 
 12 Cal.4th 186, 196, 906 P.2d 531, 536, 47 Cal.Rptr.2d 569, 574 (1995) (“Truth may lie neither with the defendant’s protestation of
 
 innocence nor
 
 with the prosecution’s assertion that the defendant is guilty of the offense charged, but at a point between these two extremes: the evidence may show that the defendant is guilty of some intermediate offense included within, but lesser than, the crime charged.”). Neither the State nor society in general has an interest in convicting a criminal defendant of a crime greater than the crime supported by the evidence, and a criminal defendant does not have a right to an acquittal when the evidence establishes that he or she has committed some crime, even if not the greater crime.
 

 Therefore, we hold, as have many other jurisdictions, that a trial court may, either sua sponte or at the request of the State, instruct the jury on a lesser-included offense that is supported by the evidence, even over the objection of one or both of the parties.
 
 [8]
 
 This is not to say that a trial court is required to sua sponte instruct the jury on a lesser-included offense when there is evidence to support such an in
 
 *909
 
 struction; to the contrary, there is no such duty on the part of a trial court. See, e.g.,
 
 Bush v.
 
 State, 695 So.2d 70, 113 (Ala.Crim.App.1995), aff'd, 695 So.2d 138 (Ala.1997) (recognizing that a trial court is not required to sua sponte instruct on a lesser-included offense if not requested). Nor do we hold that forgoing instructions on lesser-included offenses cannot be sound trial strategy on the part of defense counsel; indeed, this Court has held that such a strategy may be reasonable in some cases. See, e.g.,
 
 Parker v. State,
 
 510 So.2d 281 (Ala.Crim.App.1987). Rather, we hold, only that a trial court, in exercising its considerable discretion in formulating its jury instructions, is not bound by such an all-or-nothing defense strategy and may instruct the jury on a lesser-included offense that is supported by the evidence if it so chooses.
 

 Therefore, we find no error on the part of the trial court in sua sponte, and over the defendant’s objection, charging the jury on heat-of-passion manslaughter as a lesser-included offense of murder.
 

 II.
 

 Harbin also contends that the trial court erred in refusing to instruct the jury on criminally negligent homicide as a lesser-included offense of murder. He maintains that there was evidence — specifically, his two statements to police in which he claimed that he forgot that the knife was in his hand when he stabbed Harris— to support the charge.
 

 “ ‘A person accused of the greater offense has a right to have the court charge on lesser included offenses when there is a reasonable theory from the evidence supporting those lesser included offenses.’
 
 MacEwan v. State,
 
 701 So.2d 66, 69 (Ala.Crim.App.1997). An accused has the right to have the jury charged on ‘ “any material hypothesis which the evidence in his favor tends to establish.” ’
 
 Ex parte Stork,
 
 475 So.2d 623, 624 (Ala.1985). ‘[E]very accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however[ ] weak, insufficient, or doubtful in credibility,’
 
 Ex parte Chavers,
 
 361 So.2d 1106, 1107 (Ala.1978), ‘even if the evidence supporting the charge is offered by the State.’
 
 Ex parte Myers,
 
 699 So.2d 1285, 1290-91 (Ala.1997), cert. denied, 522 U.S. 1054, 118 S.Ct. 706, 139 L.Ed.2d 648 (1998). However, ‘[t)he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.’ § 13A-1-9(b), Ala.Code 1975. ‘The basis of a charge on a lesser-included offense must be derived from the evidence presented at trial and cannot be based on speculation or conjecture.’
 
 Broadnax v. State,
 
 825 So.2d 134, 200 (Ala.Crim.App.2000), aff'd, 825 So.2d 233 (Ala.2001), cert. denied, 536 U.S. 964, 122 S.Ct. 2675, 153 L.Ed.2d 847 (2002). ‘ “A court may properly refuse to charge on a lesser included offense only when (1) it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) the requested charge would have a tendency to mislead or confuse the jury.” ’
 
 Williams v. State,
 
 675 So.2d 537, 540-41 (Ala.Crim.App.1996), quoting
 
 Anderson v. State,
 
 507 So.2d 580, 582 (AIa.Crim.App.1987).”
 

 Clark v. State,
 
 896 So.2d 584, 641 (Ala.Crim.App.2000) (opinion on return to remand).
 

 In this case, there was no reasonable or rational theory from the evidence to support a chai’ge on criminally negligent homicide. The only evidence supporting
 
 *910
 
 such a charge, as Harbin concedes, is his own statements to police in which he claimed that he had forgotten that the knife was in his hand when he stabbed Harris. However, in
 
 Ex parte McWhorter,
 
 781 So.2d 330 (Ala.2000), the Alabama Supreme Court recognized that, in certain situations, an accused’s self-serving statements may not be sufficient, alone, to warrant an instruction on a lesser-included offense. In
 
 Ex paHe McWhorter,
 
 the appellant had given a statement to the police in which he initially stated that he was so intoxicated at the time of the crime that he did not remember it. However, as the interview with police continued, the appellant began to remember how the crime was committed, and he confessed, providing great detail. On appeal, he argued that the trial court had erred in not instructing the jury on a number of lesser-included offenses, including felony murder, intentional murder, and manslaughter, based on his statement to the police that he had been intoxicated at the time of the crime. In finding that the trial court had not erred in not instructing the jury on the lesser-included offenses, the Supreme Court stated:
 

 “The evidence offered by McWhorter as to his alleged intoxication was glaringly inconsistent with his own statement giving detailed descriptions of the events occurring at the crime scene. No evidence substantiated his claim to have been intoxicated at the time of the killing, and, indeed, the other evidence as to his condition at the time of the crime was totally consistent with the proposition that he was sober.
 
 We hold that McWhorter’s self-serving statements suggesting he was intoxicated at the time of the killing, statements made in his internally inconsistent interview by Detective Maze, is, as a matter of law, insufficient to satisfy the rigorous standard of showing that the intoxication relied upon to negate the specific intent required for a murder conviction amounted to insanity.”
 

 Ex parte McWhorter,
 
 781 So.2d at 342 (emphasis added).
 

 Subsequently, in
 
 Clark,
 
 supra, this Court, relying on
 
 Ex parte McWhorter,
 
 held that the trial court had not erred in not instructing the jury on heat-of-passion manslaughter when the only evidence supporting such an instruction was the appellant’s own statement to police. We explained:
 

 “Although
 
 McWhorter
 
 did not involve the same factual situation as that presented here, we find the Alabama Supreme Court’s opinion in
 
 McWhorter
 
 to be persuasive in our resolution of this issue. In this case, as in
 
 McWhorter,
 
 the only evidence supporting a charge on heat-of-passion manslaughter was Clark’s self-serving statement to the police. Although that statement was not internally inconsistent, as was the statement in
 
 McWhorter,
 
 it was directly refuted by undisputed physical evidence from the crime scene. When police officers arrived at the crime scene, the stick that Clark claimed Ewing had wielded as he approached Clark in
 
 front
 
 of the checkout counter was found propped up on end against the wall in a corner
 
 behind
 
 the counter. Under Clark’s theory of the case, either he or a stabbed and bleeding Ewing must have taken the time at some point either during the struggle or after the struggle to walk behind the counter and place the stick on end up against the wall. This theory is simply not reasonable.
 

 “We will not find plain error in a trial court’s refusal to instruct a jury on a lesser-included offense where the only evidence tending to bring the crime within the definition of that lesser-included offense is a defendant’s self-serv
 
 *911
 
 ing statement and where that statement is directly refuted by undisputed physical evidence. We hold, therefore, that under the circumstances in this case, it was not plain error for the trial court not to instruct the jury on heat-of-passion manslaughter as a lesser-included offense of capital murder.”
 

 Clark,
 
 896 So.2d at 642.
 

 Here, as in
 
 Ex parte McWhorter
 
 and
 
 Clark,
 
 the two statements Harbin made to police were the only support for a charge on criminally negligent homicide. Although Harbin consistently asserted in both statements that he had forgotten that the knife was in his hand when he stabbed Harris, another crucial part of his statements contained a glaring inconsistency— in his first statement, Harbin admitted that he had pulled the knife out in response to the fight, while in his second statement Harbin stated that he already had the knife out and was cleaning his fingernails in the parking lot of the gas station when the fight broke out. In addition, the undisputed evidence indicated that the knife used by Harbin was over seven inches long and that Harris suffered from not one, but three, separate stab wounds. Under Harbin’s theory of the case then, he stabbed Harris three separate times while holding a knife over seven inches long without knowing it. This theory is simply not reasonable.
 

 Moreover, we note that a charge on criminally negligent homicide, although arguably consistent with Harbin’s statements to police, would have been inconsistent with the theoiy of defense he presented at trial: self-defense or defense of others. See § 13A-3-23, Ala.Code 1975. As noted above, Harbin requested and received a jury instruction on self-defense or defense of others.
 

 “It is a well accepted principle of law that a claim of self-defense necessarily serves as an admission that one’s conduct was intentional.
 
 Harper v. State,
 
 534 So.2d 1137 (Ala.Cr.App.1988). In other words, a person simply cannot negligently or recklessly defend himself. The decision to defend one’s self, whether justified or not, is by its very nature a conscious and intentional decision.”
 

 Lacy v. State,
 
 629 So.2d 688, 689 (Ala.Crim.App.1993). Thus, by asserting self-defense or defense of others and having the trial court instruct the jury on that defense, Harbin necessarily admitted that he intentionally killed Harris, and a jury instruction on criminally negligent homicide would have been inconsistent with this defense. See, e.g.,
 
 McCollum v. State,
 
 678 So.2d 1210 (Ala.Crim.App.1995);
 
 Marshall v. State,
 
 668 So.2d 891, 892 (Ala.Crim.App.1995); and
 
 Harris v. State,
 
 542 So.2d 1312 (Ala.Crim.App.1989). A trial court does not err in refusing to give an instruction that is inconsistent with the defense strategy. See
 
 Ex parte McWhorter,
 
 781 So.2d at 339 (“Had an instruction been requested that would have conflicted with defense strategy, there is no error in the trial court’s failure to give the instruction.”);
 
 Stallworth v. State,
 
 868 So.2d 1128, 1165 (Ala.Crim.App.2001) (trial court did not err in not instructing the jury on lesser-included offenses because “instructing the jury on any lesser-included offense was not consistent with Stallworth’s defense at trial”); and
 
 Johnson v. State,
 
 820 So.2d 842, 865 (Ala.Crim.App.2000), aff'd, 820 So.2d 883 (Ala.2001) (“When instructions are inconsistent with the defense strategy, there is no error in failing to give the challenged instruction.”).
 

 Therefore, under the circumstances in this case, we find no error on the part of the trial court in refusing to instruct the jury on criminally negligent homicide as a lesser-included offense of murder.
 

 
 *912
 
 Based on the foregoing, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 BASCHAB, P.J., and McMILLAN and WELCH, JJ., concur.
 

 [1]
 

 . Harbin appeared to pursue these issues as alternative arguments. Harbin’s counsel first requested that the court instruct the jury on criminally negligent homicide. When the court initially indicated that it questioned whether criminally negligent homicide was appropriate, Harbin's counsel then requested that the court instruct the jury solely on murder as charged in the indictment.
 

 [2]
 

 . We note that the State’s specific argument that a request for a jury instruction must be written, not oral, and that, thus, Harbin’s oral request for a charge on criminally negligent homicide was not sufficient to preserve that issue for review is meritless. As noted by the Alabama Supreme Court in
 
 Ex parte McCall,
 
 594 So.2d 628, 630 (Ala.1991): "[Ain oral request for a jury instruction fis] sufficient to preserve error in a criminal case.’’ See also
 
 Ex parte Pettway,
 
 594 So.2d 1196 (Ala.1991).
 

 [3]
 

 . It is well established that heat-of-passion manslaughter " 'is designed to cover those situations where the jury does not believe a defendant is guilty of murder but also does not believe the killing was totally justified by self-defense.'
 
 " Williams v. State,
 
 675 So.2d 537, 541 (Ala.Crim.App.1996), quoting
 
 Shultz v. State,
 
 480 So.2d 73, 76 (Ala.Crim.App.1985).
 

 [4]
 

 . In
 
 Mitchell v. State,
 
 706 So.2d 787 (Ala.Crim.App.1997), this Court held that the trial court did not err in charging the jury on felony murder as a lesser-included offense of capital murder over the defendant’s objection. However, the sole argument raised by the defendant in that case was whether felony murder was a lesser-included offense of the capital murder. The defendant did not argue that he was entitled to pursue an all-or-nothing approach and, thus, this Court did not address that issue.
 

 [5]
 

 . In Alabama, either party may request a jury instruction under Rule 21.1, Ala.R.Crim.P.
 

 [6]
 

 . In this case, the State did not voice an opinion on the issue one way or the other.
 

 [7]
 

 . Alabama has a substantially similar definition of lesser-included offense. See § 13A-1-9(a), Ala.Code 1975. In addition, Rule 13.2(c), Ala.R.Crim.P., provides that "[sjpeci-fication of an offense in an indictment or information shall constitute a charge of that offense and of all lesser offenses necessarily included therein.'' Thus, in Alabama, as a matter of law, a defendant is on notice that he or she is charged not only with the specific offense set out in the indictment, but also with all lesser-included offenses to that offense.
 

 [8]
 

 . We nole that Harbin's reliance on
 
 Spaziano v. Florida,
 
 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), is misplaced. The issue in
 
 Spaziano
 
 was whether the trial court had erred in not instructing the jury on lesser-included offenses after the defendant refused to waive the statute of limitations on those offenses. In addressing this issue, the United States Supreme Court noted that "there may well be cases in which the defendant will be confident enough that the State has not proved capital murder that he will want to take his chances with the jury,” and that in those cases, it could see "little reason to require him not only to waive his statute of limitations defense, but also to give the State what he perceives as an advantage — an opportunity to convict him of a lesser offense if it fails to persuade the jury that he is guilty of capital murder.” 468 U.S. at 456-57, 104 S.Ct. 3154. Although the Court recognized the validity of an all-or-nothing strategy, the Court did not hold that a trial court was bound by that strategy if the defendant elected to pursue it.